O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA TERRAZAS,<br><br>                Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>                Defendant. | CASE NO. ED CV 12-00323 RZ<br><br>MEMORANDUM OPINION<br>AND ORDER |

        Plaintiff Martha Terrazas presents a single argument why the Commissioner was wrong in finding that she is not entitled to receive Supplemental Security Income. She asserts that the Commissioner's decision rested on the testimony of the vocational expert, who deviated from the DICTIONARY OF OCCUPATIONAL TITLES without explaining why. The Court does not agree with Plaintiff's argument.

        The Commissioner's delegate, the Administrative Law Judge, found that Plaintiff had a major depressive disorder [AR 15], but nevertheless retained the residual functional capacity to work at all exertional levels, so long as the work was limited to simple, repetitive tasks. [AR 18] Relying on the testimony of the vocational expert [AR 21, 80-81], the Administrative Law Judge then found that Plaintiff could perform any of three jobs — a bagger, a bottling line attendant, or a basket filler — each of which existed

in sufficient numbers in the economy. [AR 21] Therefore, the Administrative Law Judge concluded, Plaintiff was not under a disability and not entitled to receive benefits. [*Id.*]

In this Court, Plaintiff says that, because the Administrative Law Judge found that she could not communicate in English, the vocational expert's testimony was inconsistent with the DICTIONARY; Plaintiff says that each of the identified jobs, even though requiring the lowest level of English competence, nevertheless requires the ability to do some reading and writing in English. To begin with, however, the Administrative Law Judge's finding was more specific than what Plaintiff says; the Administrative Law Judge found that "[t]he claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 416.964)." Thus, the "ability to communicate in English" was tethered to the finding that Plaintiff was to be considered as illiterate in English; the Administrative Law Judge did not find that Plaintiff had no communication skills whatsoever. Moreover, there is nothing in the DOT descriptions of any of the three jobs that requires greater than a minimal familiarity with English. In accordance with this fact, the Administrative Law Judge specifically found that the vocational expert's testimony was consistent with the information contained in the DICTIONARY.

Plaintiff's argument would mean that a person who is illiterate in English automatically would be disabled if he or she had a disability. This is because, by Plaintiff's argument, a person with an English level of "1" according to the DICTIONARY has to be able to have some literacy. Yet the cases recognize the modern reality that people who are not predominantly English-speaking nevertheless sometimes are employable. Even in *Pinto v. Massanari*, 249 F.3d 840 (9th Cir. 2001), the Ninth Circuit acknowledged that "[a] claimant is not per se disabled if he or she is illiterate." 249 F.3d at 847. Indeed, if illiteracy automatically translated into disability, then even illiterate persons who had a work history automatically would be disabled. This is not the law.

///

///

Thus, Social Security regulations provide:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance.

20 C.F.R. Part 404, Subpart P. App. 2 at § 200.00(i).  The regulations thus contemplate that there may well be jobs, certainly those at an unskilled level, in which it is not so important that a person be literate in English.

*Pinto* remanded a step four determination because the vocational expert did not explain how his conclusion deviated from the DICTIONARY's finding that basic literacy was required of the claimant's prior work.  Here, as noted, the Administrative Law Judge found (at Step five) that the vocational expert's conclusion was consistent with the DICTIONARY, and the expert, in discussing one of the jobs, made clear that the tasks involved were not those requiring literacy ("this is not a bagger in the supermarket. This is someone who simply places plastic bags over household furnishing or other items." [AR 81]).  This is not a case of unexplained and direct conflict with the DICTIONARY.

Finally, the decision comports with the reality of Plaintiff's situation.  Although the administrative hearing was conducted with an interpreter, this was done simply because Plaintiff felt more comfortable that way; the interpreter informed the Administrative Law Judge that Plaintiff could speak English, and the Administrative Law Judge talked to the Plaintiff in English before swearing in the interpreter.  [AR 66]  Plaintiff is, after all, a naturalized U.S. citizen, who has not lived outside the country since 1969, when she was ten years old [AR 132], and who completed the eleventh grade of high school seven years later [AR 132], obviously therefore in the United States.  She has

- 3 -

acknowledged that she can read and understand English and write more than her name in English. [AR 130] The record contains substantial evidence that this kind of person could perform the jobs identified by the Administrative Law Judge.

The decision of the Commissioner is affirmed.

DATED:   November 26, 2012

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE